```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
FDIC AS RECEIVER FOR AMTRUST BANK,
                        Plaintiff(s),            **REPORT AND
                                                 RECOMMENDATION**
          -against-                              CV08-3369 (TCP) (WDW)

THE MORTGAGE ZONE, INC., et al.,
                        Defendant(s).
----------------------------------------------------------X
```
**WILLIAM D. WALL, United States Magistrate Judge:**

    Before the court on referral from District Judge Platt is the damages portion of the plaintiff's motion for summary judgment, which he granted in favor of the plaintiff on July 22, 2011. For the reasons set forth herein, I recommend that the plaintiff, the FDIC as Receiver for AmTrust Bank ("FDIC"), be awarded $7,811,516.40 against defendant Dean Reskakis. As the FDIC recognizes, if, in the future, it forecloses on the subject properties or receives additional money from other defendants, it would have to offset those recoveries from the damages owed by Reskakis.

## BACKGROUND

    General familiarity with the facts underlying this lawsuit is assumed. On July 22, 2011, District Judge Platt heard argument on the FDIC's motion for summary judgment against defendant Dean Reskakis [188] and granted the motion on liability. He referred the damages portion of the motion to me. I offered the parties an opportunity to file additional papers regarding damages (DE[204]). The pro se defendant, Dean Reskakis, who was previously represented by counsel and who is himself an attorney, filed a motion seeking additional discovery in the matter, in aid of his opposition to damages. DE[205]. The motion was opposed by the FDIC (DE[207]). I suspended the deadline for the submission of opposition to the

damages sought and scheduled oral argument on the motion for discovery. I heard oral argument on October 13, 2011 and denied the motion for the reasons set forth on the record. DE[209]. I did not at that time set a new deadline for the submission of damages opposition by the pro se defendant Reskakis, but corrected that oversight by order dated December 7, 2011, requiring his opposition to be filed no later than December 21, 2011. He filed his opposition on December 21[1]. The FDIC, on January 17, 2012, sought permission to file a reply to the opposition. DE[212]. Mr. Reskakis opposed that request, but asked for permission to file a sur-reply if it were granted. DE[213]. I granted the FDIC's motion and accepted the reply, but denied Reskakis's motion to file a sur-reply. DE[214].

On its summary judgment motion, the FDIC summarized its claims against Dean Reskakis, stating that he repeatedly breached his fiduciary duties to AmTrust Bank and converted funds that AmTrust disbursed to him to be used to close residential loans. *See* DE[188-2] at 1-2. As AmTrust's attorney for the closing of 17 mortgages for the purchase of 13 properties, the FDIC argued, Reskakis owed AmTrust a fiduciary responsibility to disburse the mortgage loan proceeds entrusted to him as authorized, to guard against fraud, to halt all transactions that appeared to be fraudulent, to ensure that AmTrust's mortgages and deeds vesting title in the listed borrowers were properly recorded, and to complete accurate HUD-1 Settlement Statements, and he failed on all accounts. Further, they argued, Reskakis acknowledged written closing instructions provided by AmTrust, which prohibited closing loans when the seller had been in possession of the property for less than 12 months and, among other requirements,

---

[1]In reviewing Reskakis's submission, it became clear that several pages were missing. To expedite my review of the papers, I asked plaintiff's counsel to fax copies of the missing pages to chambers. They did so and the submission has been docketed as DE[218].

specified that the HUD-1 Settlement Statements must accurately reflect the financial transaction. Despite those instructions, the FDIC argued, Reskakis knew of and participated in fraudulent flip or concurrent transactions that he did not report to AmTrust, repeatedly disbursed funds to his codefendants who were not listed on the HUD-1s, and failed to ensure the recording of proper deeds and mortgages to protect AmTrust's security interests. Reskakis's own records show that he paid himself out of AmTrust's mortgage loan proceeds at least $23,420 more than he was entitled to receive as AmTrust's lawyer. Reskakis's records also reflect more than $4 million in unauthorized and unaccounted for transfers to his codefendants. As a result of these actions, the plaintiff argued, it has incurred $9,061,516.40 in damages on its causes of action for Breach of Fiduciary Duty, Conversion and Legal Malpractice.

On the motion for summary judgment, the FDIC provided copious details and documentation in support of its claims and damages. At the oral argument, Judge Platt granted the motion as to liability, without reservation, finding that there were no issues of material fact on the liability issues, and that Reskakis is liable on all of the causes of action asserted against him - breach of fiduciary duty, legal malpractice and conversion. Thus, all of the FDIC's factual allegations as to Reskakis's acts, set forth in detail in the Rule 56.1 statement and Revised 56.1 Statement, were accepted and are not subject to discussion in this Report, which addresses only the issue of damages and whether the FDIC has established its entitlement to the amount now sought from Reskakis - $7,811,516.40. That amount represents their claimed damages of $9,061,516.40, with a setoff of $1.25 in settlement payments received from defendants Icon Title Agency LLC and Commonwealth Land Title Insurance Company. Their proof of damages and Reskakis's opposition are addressed *infra*.

3

**DISCUSSION**

The amount of damages sought by the FDIC is its calculation of the losses it suffered on the 17 loans overseen by Reskakis, all of which are in default. Reskakis challenges the amount of damages sought, on various grounds, in his opposition to the motion for summary judgment (DE[202]) and in his supplemental affidavit in opposition to the damages (DE[211 &218]). Those arguments are reviewed here:

<u>Lack of Proximate Cause</u>: To the extent that he argues that he did not proximately cause the damages sought, that argument is no longer viable. Causation is an element of the causes of action on which Judge Platt granted summary judgment. If Reskakis had not caused the harm, he would not have been found to be liable. Indeed, any of Reskakis's arguments against damages based on the merits of the claims against him are not relevant to this Report.

<u>FDIC's Failure to Mitigate Damages</u>: Under New York law, to prove that the plaintiff has failed to mitigate damages, Reskakis must prove "not only that [the FDIC] failed to make diligent efforts to mitigate (citations omitted) . . . but also the extent to which such efforts would have diminished plaintiff's damages." *LaSalle Bank NA v. Nomura Asset Capital Corp.,* 72 A.D.3d 409, 411 (N.Y. App. Div. 2010). Reskakis has not met that burden. All of the property transactions at issue in this lawsuit involved fraud, and the plaintiff's interest in the properties is clouded by Reskakis's failure[2] to have AmTrust's mortgages properly recorded and by the

---

[2]Reskakis argues that the improper recording was not his fault, but defendant Icon's. This is an issue that goes to the merits, and is thus not relevant here to the consideration of damages. I note the FDIC's explanation that AmTrust entrusted Reskakis with the duty of ensuring that the mortgages and deeds were properly recorded, and although Reskakis could delegate duties to a subagent, it was still his responsibility to ensure that they were recorded and AmTrust's security interests perfected. *See* DE[202-1] at 4. Reskakis breached his fiduciary duty in failing to do so and is responsible for the damages flowing from that breach. Reskakis's argument that the fault

transfer of some properties to third parties. Given these circumstances, the FDIC argues that it has taken all reasonable steps to mitigate, noting, for example, that it has obtained equitable liens on the properties involved in the subject loans and has attempted to obtain judgment liens on the properties to the extent possible. I recommend a finding that the FDIC as Receiver has mitigated to the extent possible.

FDIC's Failure to Foreclose: Related to the failure to mitigate argument is Reskakis's claim that the calculation of over $9 million in damages is incorrect in that the plaintiff has not yet foreclosed on the subject properties, despite having the right to do so on at least nine of them. DE[202], ¶16. The subject properties, he argues, still have value that would have to be set off from the losses that the plaintiff allegedly suffered. The FDIC counterargues that there is no need to complete foreclosure sales arising from malpractice and breach of fiduciary duty claims, each of which allows for the award of a broad range of damages.

Damages for legal malpractice, they argue, "are designed to make the injured client whole," and clients may recover any losses suffered as a result of their attorney's malpractice. *See* DE[202-1] at 5-6 (citing *Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer,* 8 N.Y.3d 438, 443 (N.Y. App. Div. 2007); *Barnett v. Schwartz,* 47 A.D.3d 197, 199 (N.Y. App. Div. 2007); *Misulovin v. Chrisomalis,* 792 N.Y.S.2d 759, 760-61 (N.Y. App. Div. 2004); *Harris v. Bonacci,* 109 A.D.2d 1072, 1073-74 (N.Y. App. Div. 1985). Damages for breach of fiduciary duty are generally measured by the amount of loss sustained, including lost opportunities for profit. *105 East Second Street Assocs. v. Bobrow,* 175 A.D.2d 746, 746-47 (N.Y. App. Div. 1991). Here, the FDIC urges, the bank-funded loans are now in default as a result of Reskakis's acts, it has

---

for the failure to record must be apportioned is discussed *infra*.

been damaged by the outstanding principal balances on the loans, and it is entitled to those balances now.

While the cases cited by the FDIC in regard to damages all support the proposition that broad damages are available, they do not expressly address the question of whether the FDIC has an obligation to foreclose on the subject properties to mitigate the damages owed. Given the breadth of damages available, however, I recommend a finding that there is no obligation to foreclose before assessing damages against Reskakis. As the FDIC recognizes, if, in the future, it does foreclose or receive additional money from other defendants, it would have to offset those recoveries from the damages owed by Reskakis, but there is no support for the claim that it must foreclose before seeking damages. *See* DE[202-1] at 7. It is entitled to recovery of the losses suffered to date, which it bases on the outstanding principal balances of the defaulted loans, as discussed *infra*.

<u>Application of New York's General Obligations Law §15-108</u>: Reskakis argues that New York General Obligation Law §15-108 requires a reduction in the amount of damages sought from him. That law provides, *inter alia*:

> **Release or covenant not to sue**: (a)Effect of release of or covenant not to sue tortfeasors. When a release or a covenant not to sue or not to enforce a judgment is given to one of two or more persons liable or claimed to be liable in tort for the same injury, or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms expressly so provide, but it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, or in the amount of the released tortfeasor's equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest.

Based on this provision, Reskakis argues that any judgment against him must be reduced

by the greater of "(1) the amounts of any monetary settlements obtained from, or on behalf of, each and every one of the numerous co-defendants herein or (2) the settling defendants' equitable shares of the damages sustained by the plaintiff/claimant." DE[218] at 3, ¶6. Reskakis argues that because a large portion of the plaintiff's damages arose from the failure to properly record deed transfers and mortgages and that failure was primarily on the part of Commonwealth and Icon, blame should be apportioned accordingly after a trial.

Where a plaintiff settles with one of several joint tortfeasors, section 15-108(a) provides that its claim against the remaining tortfeasors is reduced by the greater of (1) the amount paid for the release; (2) the amount stipulated in the release; or (3) the released tortfeasor's equitable share of the plaintiff's damages. The New York Court of Appeals has held that while the first two reductions are available at any point before entry of final judgment, the third is lost where a defendant fails to seek apportionment of liability until after a jury's liability verdict. *See Whalen v. Kawasaki Motors Corp., U.S.A.*, 92 N.Y.2d 288, 292 (1998). The Second Circuit considered whether "a defendant similarly forfeits its right to a setoff in the amount of the settling defendant's equitable share if it does not seek apportionment until after summary judgment is entered against it on the issue of liability," and concluded that the defendant does forfeit under those circumstances. *Schipani v. McLeod,* 541 F.3d 158, 159-60; *see also Chubb & Son, Inc. v. Kelleher,* 2006 WL 2711543, *3 (E.D.N.Y. Sept. 21, 2006)(defendant who did not assert §15-108(a) until after summary judgment granted and liability established not entitled to seek reduction in judgment based on apportionment of fault). In so holding, the Second Circuit noted that there is no logical distinction between a jury verdict and an award of summary judgment on the issue of liability and "when liability and damages are determined separately, either through

7

formal bifurcation or summary judgment, liability must be apportioned at the time it is determined." 541 F.3d at 162.

The *Schipani* court also noted that not every injury has only one cause, and when multiple tortfeasors act concurrently or in concert to produce a single injury, they may be held jointly and severally liable and plaintiffs may recover all of their damages from any of the tortfeasors sued. *Id.* at 163 (internal punctuation and citations omitted). Ultimately, apportionment of fault is a component of the liability determination. *Id.* (citation omitted). In finding Reskakis liable, the court necessarily found that he caused the damage to the plaintiff and it was at the summary judgment stage that he had the right, and the burden, to show that the fault should be apportioned. He did not do so and has thus forfeited the right to seek apportionment under section 15-108. As the *Schipani* court observed, "'[C]onsiderations of judicial economy could not tolerate a result that would require that . . . this case be retried . . . for the sole purpose of apportioning the liability among the various tortfeasors . . . .'" 541 F.3d at 163 (quoting *Construction Tech., Inc. v. Lockformer Co.,* 781 F. Supp. 195, 202 (S.D.N.Y. 1990)). Such a "retrial" is precisely what Reskakis seeks.

Section 15-108 was enacted to encourage settlement and "to ensure that nonsettling tortfeasors are not required to bear more than their equitable share of liability." *Apple v. Jewish Hosp. & Med. Ctr.,* 829 F.2d 326, 331 (2d Cir. 1987). "But the Legislature did not make §15-108 apportionment an absolute right - it made it an affirmative defense . . . and affirmative defenses are subject to forfeiture if not raised in a timely fashion." 541 F.3d at 164. None of the twelve affirmative defenses set forth by Reskakis in his Answer, which was filed by Reskakis' former attorney, specify section 15-108, nor does his Affidavit in Opposition to Plaintiff's

Motion for Summary Judgment reference that statute. *See* DE[27] & [202]. Reskakis did attempt to shift blame to the other defendants, but not with specific reference to section 15-108. *See, e.g.*, DE[202] Aff. in Opp., at ¶17. District Judge Platt either did not read a request for apportionment into Reskakis's papers, or he did so and rejected that argument. In any event, the time to apportion damages is long past and Reskakis has forfeited his right to seek that relief in this post-liability phase of the damages inquiry.

The offset of the settlement monies paid by Icon and Commonwealth is another matter. In its reply papers, the FDIC amended the amount it is seeking from Reskakis down to $7,811.516.40 by offsetting the $1,250,000 in settlement monies it received from defendants Icon and Commonwealth. The FDIC states that is did not do the offset on section 15-108 grounds, but I need not consider the reason for the offset, as it was the correct approach to take.

<u>The Plaintiff's Negligence Requires a Reduction in the Amount of Damages</u>: Reskakis also argues that negligence on the part of AmTrust warrants a reduction in the damages pursuant to CPLR section 1411. The FDIC notes that the CPLR provides for the reduction of a damages award due to the culpable conduct of the plaintiff, but places the burden of proving the plaintiff's negligence on the defendant asserting the defense. *See* CPLR §1412; §3018(b); *Perales v. City of New York,* 274 A.D.2d 349, 350 (App. Div. 2000); *Jones v. New York,* 62 A.D.2d 1078, 1079 (App. Div. 2009) (comparative negligence to be pleaded and proved by party alleging it). Here, the FDIC argues, Reskakis has failed to point to a single piece of admissible evidence in support of his claim, instead relying on broker price opinions (BPOs) about the value of the subject properties, obtained years after the loans were already in default, and on settlement communications from counsel, neither of which, arguably, are competent admissible evidence to

support the negligence claim.

I agree that there is no support for a claim of negligence by AmTrust that would warrant a reduction in damages. The BPOs are from 2011, more than 3 years after the transactions at issue closed. Even accepting their validity, there is no basis for inferring that AmTrust knew, when those loans were made, that the properties value would decline over time to be far less than the amount of the loans. Further, as the FDIC notes, Reskakis cannot rely on confidential communications between counsel for the parties, identified as settlement communications and subject to Rule 408 of the Federal Rules of Evidence, which provides that:  The FDIC correctly notes that Reskakis has failed to raise a material issue of fact as to AmTrust's alleged negligence that would impact the amount of damages. Further, as I have said repeatedly in this Report, liability for the losses has already been found on Reskakis's part and he is not entitled to a trial on that liability.

The 1173 Dean Street Property: Reskakis notes that the Complaint makes reference to a loan made in connection with property at 1173 Dean Street in Brooklyn, but that he did not represent AmTrust in that transaction and is not liable for any damages connected with it. The plaintiff avers that the damages sought do not include the amount stemming from the Dean Street transaction and that it has deducted $884,465.96 outstanding on the two loans for that property from the $9,945,982.36 outstanding for all 19 loans in the Complaint. DE[212-1] at 5.

The Actual Damages Sought:

Reskakis argues, variously, that the amount of damages sought by the plaintiff is bogus, or inflated, or just plain wrong. The FDIC argues that the amounts are meticulously supported by the established facts and the documents submitted in support of the motion for summary

10

judgment. I agree and recommend a finding that the amount of damages is accurate and that the plaintiff should be awarded $7,811,516.40 against Dean Reskakis. As was established on the motion, Reskakis proximately caused all of the plaintiff's damages by failing to halt the loan closings as required and by converting the mortgage-loan proceeds. Had Reskakis performed his duties as required, AmTrust would not have made the subject loans. As a direct consequence of Reskakis's actions, all of the mortgage loans are in default and the total due and owing on those loans is $9,061,516.40, as reflected in the documents in support. As noted, that figure does not reflect damages flowing from the Dean Street property, and the actual amount sought from Reskakis -$7,811,516.40- reflects the setoff from the Icon/Commonwealth settlement.

## OBJECTIONS

A copy of this Report and Recommendation is being sent to counsel for the plaintiffs by electronic filing on the date below. The court will mail a copy of this Report to Dean Reskakis at his address of record by certified mail, return receipt requested. If the plaintiff has a fax number for Mr. Reskakis, they should fax him a copy of the Report upon receipt. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver,* 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
February 8, 2012

    /s/ William D. Wall
WILLIAM D. WALL
United States Magistrate Judge